UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
MAKARAND GADRE,

                      Plaintiff,

          -v-

HEXANIKA, INC.,

                      Defendant.
---------------------------------------------------------------

21-CV-11221 (JPO)

FINDINGS OF FACT AND
CONCLUSIONS OF LAW
FOLLOWING BENCH TRIAL

J. PAUL OETKEN, District Judge:

      This case involves a dispute over unpaid compensation between Plaintiff Makarand Gadre and Defendant Hexanika, Inc. ("Hexanika"). The claims that remained for trial were Plaintiff's claims for breach of contract and promissory estoppel and Defendant's counterclaims for breach of contract and unjust enrichment. The general background of this litigation is described in the Court's prior opinion in this case. *See Gadre v. Hexanika, Inc.*, No. 21-CV-11221, 2024 WL 4276225 (S.D.N.Y. Sept. 24, 2024).

      A one-day bench trial was held on January 13, 2025. The Court now issues its Findings of Fact and Conclusions of Law.

## I. Findings of Fact

      The Court finds the following facts by a preponderance of the evidence based on the trial testimony and the documents admitted as evidence.

      Makarand Gadre is a software consultant with a four-decade career in software design and architecture, including twenty years of experience at Microsoft. (Tr. 58:20-24.) It is undisputed that Gadre is a dual citizen of India and the United States and is domiciled in India. (ECF No. 2 ("Compl.") ¶ 4.) Around 2014 or 2015, as Gadre left Microsoft and moved back to India, he was introduced to Hexanika, a software development start-up incorporated in Delaware.

1

(Tr. 58:25, 59:20-60:5, 50:19-20; Compl. ¶ 5.) The founder, CEO, sole owner, and sole director of Hexanika is Yogesh Pandit, who previously resided in India but had moved to Arkansas and worked out of his home there by December 2021. (Tr. 9:3-4, 10:24-11:1, 11:14-25.)

Gadre began working for Hexanika as its Chief Technology Officer in January 2015. (Tr. 60:6-12; 60:25-61:1.) The employment spanned several contracts at issue. On January 1, 2015, Gadre entered into a written agreement with Hexanika to provide consulting services in "software architecture, software design, infrastructure planning, and hiring personnel" for a monthly fee of $3,500 (the "2015 Agreement"). (PX 1 at 1, 14-15 (capitalizations omitted).) The 2015 Agreement provided that "[Gadre] shall use [his] best efforts to perform the Services such that the results are satisfactory to Hexanika," and that "Hexanika shall be obligated to pay only for actual Services rendered." (*Id.* at 1-2.) On September 1, 2017, Gadre and Hexanika entered into a new one-year agreement that raised Gadre's monthly pay to $7,500 (the "2017 Agreement"). (PX 2 at 1, 3.) The 2017 Agreement included a new provision that "the receipt by Hexanika of payment from Client for [Gadre's] Services and/or Expenses is a condition precedent to Hexanika's obligation to make payment to [Gadre]," although "Hexanika may, in its sole discretion, advance funds to [Gadre] prior to receiving funds from Client." (*Id.* at 3.) On September 18, 2018, Gadre and Hexanika executed an amendment to their original 2015 Agreement, extending its terms to cover the period from July 1, 2018 to December 31, 2018 ("the 2018 Agreement"). (DX 7.) On June 8, 2020, the parties agreed to further extend the 2015 Agreement to cover the period from January 1, 2019 to December 31, 2020 (the "2020 Agreement"). (PX 3.) All four contracts chose New York law as the governing law. (PX 1 at 12; PX 2 at 14.)

Gadre performed consulting services for Hexanika from January 2015 to May 2021. (Tr. 60:21-61:1.) In 2018, as Hexanika's business struggled, its payments to Gadre started to fall behind. (Tr. 61:23-63:20.) At trial, Defendant attributed the payment shortfall to the non-functioning of Gadre's work product and the consequent lack of client payment. (Tr. 50:4-10.) In that regard, Hexanika presented a smattering of emails suggesting deficiencies in the codes that Gadre produced. Pandit wrote in a May 16, 2017 email that "[t]he tests are failing continuously." (DX 5 at 1.) A March 14, 2020 email from Gadre to his team mentioned "a much bigger problem in LightSpeed data" and stated that FPG, a potential client, "cannot get these in a consistent format and thus need manual extraction for these files." (DX 9; Tr. 75:8-76:1.) Pandit complained in an August 16, 2020 email about "wrong design, architecture, bad code quality, lack of training of development team, issue with release and version manag[e]ment, etc.," and Gadre responded, "Let us get come up with a plan to learn from the mistakes done earlier, not do them again, and make some new ones." (DX 14 at 1.) And in a September 26, 2020 email to his team, Gadre wrote "SERIOUS CODE PROBLEM" in bold, enlarged font. (DX 16 at 1.)

In response to Hexanika's criticisms, Gadre pointed out that "[t]he biggest mistake was that our product did not have specification from the business side. We did not have a clear goal. It kept on changing every day." (Tr. 80:21-23.) He credibly testified as follows:

> The question is the product is supposed to do what it is designed for. For example, I design a car and you want to take it to water, it is not going to work. That's not how the product work. The product is designed to do one thing, and they're showcasing it as to do something else. It exactly worked the way it was designed. And it actually amazingly passed all the tests of the development, verification and quality assurance for the things it [was] designed for.

(Tr. 91:16-24.) In contrast, Hexanika's sole witness, Pandit, did not provide any testimony specifically contradicting Gadre's testimony on these points or credibly disputing the fact that

3

Gadre substantially performed the work he was hired to perform. After weighing testimony from both parties about the adequacy of Gadre's work, the Court finds that any purported deficiency in Gadre's codes was due to either the nature of a work in progress or changing expectations from Hexanika's leadership. Gadre had no personal knowledge of whether Hexanika received payments from any clients. (Tr. 88:13-18.)

On November 12, 2020, Gadre emailed Pandit and Sucheta Phatak, Hexanika's human resources staff, two spreadsheets that he compiled, documenting each payment owed and received during his time at Hexanika. (PX 4.) The balance due started at $0 on January 1, 2018, reached $18,500 as of September 1, 2018, and totaled $105,500 as of November 1, 2020. (*Id.* at 2.) On December 30, 2020, Phatak emailed Gadre a proposed repayment schedule for his unpaid compensation. (PX 7 at 3.) The next day, after some adjustments to account for Gadre's December 2020 fees, Phatak sent an updated repayment sheet to Gadre, listing a total amount of $120,500 due and "confirm[ing] the payment [would] be processed as mentioned below." (*Id.* at 1-2.) Gadre responded, "Thanks! That's fine." (*Id.* at 1.) Pandit was copied on the entire email chain. (*Id.* at 1-3.) The Court finds that $120,500 represents the best evidence of the amount that Hexanika owed Gadre in unpaid compensation under the consulting agreements. Gadre credibly testified that he never received the $120,500 payment, and Pandit did not contradict that testimony. (Tr. 61:2-15; *see also* PX 10, PX 11, PX 12.)

## II.    Conclusions of Law

### A.    Subject Matter Jurisdiction

It is undisputed that Gadre is domiciled in India and Hexanika is a Delaware corporation. A corporation's principal place of business is "a single place" where its "officers direct, control, and coordinate the corporation's activities"—referred to as the "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (internal quotation marks omitted). Because Pandit,

4

Hexanika's CEO and sole director, lived and worked in Arkansas in December 2021, when this case was filed, Hexanika's principal place of business was in Arkansas. *See Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("[D]iversity of citizenship is assessed at the time the action is filed."). Therefore, Hexanika had the citizenship of Delaware and Arkansas at the time of filing of this action. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because this is an action between "citizens of a State and citizens or subjects of a foreign state" and the matter in controversy exceeds $75,000, exclusive of interest and costs.

### B. Gadre's Claims

Gadre asserts a breach of contract claim and a promissory estoppel claim.[1] Under New York law, the elements of a breach of contract claim are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted). Plaintiff has met his burden of proof with respect to each of these elements. The 2015, 2017, 2018, and 2020 Agreements are all contracts between the parties.[2] Gadre adequately performed his obligations of providing consulting services in software architecture and design to Hexanika pursuant to the agreements, and Defendant's contention that Gadre produced codes that were so deficient as to substantially fail

---

[1] Gadre also pleaded a Freelance Isn't Free Act claim (Compl. ¶¶ 16-21), but he dropped that claim before trial (ECF No. 97 at 2).

[2] Defendant disputes that the 2018 Agreement was between Gadre and Hexanika, because it contained a provision that "[t]he Parties agree to amend the contract and now Makarand Gadre will be considered as a Consultant representing Pluto Technology Systems LLC instead of an individual Consultant." (DX 7.) The signature to the 2018 Agreement remained Gadre's. (*Id.*) The Court finds that this provision does not replace Gadre as a party to the contract.

5

his contractual duty is unsupported by credible evidence.  By contrast, Hexanika breached the contracts by failing to pay Gadre consulting fees.  As acknowledged in Phatak's email, the damages amounted to $120,500.

The 2017 Agreement, however, contains a provision that "the receipt by Hexanika of payment from Client for [Gadre's] Services and/or Expenses is a condition precedent to Hexanika's obligation to make payment to [Gadre]."  (PX 2 at 3.)  The 2015 Agreement, as well as the 2018 and 2020 Agreements which extended that 2015 Agreement, do not have such a provision.  "Under New York law, . . . a condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'"  *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995)).  "Where there is a condition precedent to performance, the party seeking to enforce the contractual obligation bears the burden" of proving that the condition precedent is satisfied.  *Raymond v. Marks*, 116 F.3d 466, 466 (2d Cir. 1997) (citing *Rachmani Corp. v. 9 E. 96th St. Apartment Corp.*, 629 N.Y.S.2d 382, 386 (1st Dep't 1995)).  At trial, Plaintiff put on no credible evidence that Hexanika received payment from any client for Gadre's services; in fact, Gadre denied having knowledge about client payments.  Therefore, Gadre has failed to satisfy his burden of proof with respect to the condition precedent in the 2017 Agreement.[3]

---

[3] Gadre argues that Hexanika waived the condition precedent by making certain payments to him and later promising to pay $120,500.  (Tr. 109:20-22, 118:6-9.)  "Because waiver of a contract right must be proved to be intentional, the defense of waiver requires a 'clear manifestation of an intent by [a party] to relinquish [its] known right' and 'mere silence, oversight or thoughtlessness in failing to object' to a breach of the contract will not support a finding of waiver."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (quoting *Courtney-Clarke v. Rizzoli Int'l Publ'ns, Inc.*,

Accordingly, the Court finds in favor of Gadre on his breach of contract claim as to the 2015, 2018, and 2020 Agreements, but finds in favor of Hexanika on Gadre's breach of contract claim as to the 2017 Agreement. For purposes of damages calculation, the Court credits Gadre's spreadsheet that tracked the balance of payments from each month. (PX 4 at 2.) The 2017 Agreement was in effect from September 1, 2017 to August 31, 2018. (PX 2 at 1-2.) Based on Gadre's spreadsheet, the unpaid balance corresponding to that time period amounted to $18,500. (PX 4 at 2.) Because the Court finds in favor of Hexanika on the 2017 Agreement, the Court subtracts $18,500 from the $120,500 total damages. Thus, the recoverable damages for Gadre's breach of contract claim are $102,000.

Where a plaintiff asserts a breach of contract claim, "[c]ourts dismiss promissory estoppel claims as duplicative unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract." *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 704 F. Supp. 3d 473 (S.D.N.Y. 2023) (cleaned up) (collecting cases). Gadre has identified no duty that Hexanika owed him independent from its obligation under the consulting agreements. Therefore, the Court finds that Gadre's promissory estoppel claim is duplicative of his breach of contract claim and dismisses it.

C.    **Hexanika's Counterclaims**

Hexanika asserts counterclaims for breach of contract and unjust enrichment. As discussed above, the Court finds that Gadre adequately performed services for Hexanika in

---

676 N.Y.S.2d 529, 529 (1st Dep't 1998)). The 2017 Agreement provides that "Hexanika may, in its sole discretion, advance funds to [Gadre] prior to receiving funds from Client." (PX 2 at 3.) The Court finds that Hexanika's payment to Gadre is an exercise of its contractual discretion rather than a relinquishment of its contractual right, and Phatak's failure to raise the condition precedent in his email is a mere oversight. Plaintiff has failed to prove that Hexanika waived the condition precedent.

software architecture, software design, infrastructure planning, and hiring personnel, and has not breached any of the consulting agreements. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted). For the same reasons discussed with respect to the breach of contract claim, Hexanika has not proven that Gadre was unjustly enriched.

Accordingly, the Court finds in favor of Gadre on Hexanika's counterclaims for breach of contract and unjust enrichment.

### III. Conclusion

Based on the foregoing Findings of Fact and Conclusions of Law, the Court finds that Gadre has established his breach of contract claim with respect to the 2015, 2018, and 2020 Agreements, but has failed to establish his breach of contract claim with respect to the 2017 Agreement or his promissory estoppel claim. The Court finds that Hexanika has failed to establish its breach of contract and unjust enrichment claims.

The Clerk of Court is directed to enter judgment in favor of Makarand Gadre and against Hexanika, Inc. in the amount of $102,000 plus prejudgment interest at 9 percent per annum, calculated from December 31, 2020 to the date of judgment.

Upon entry of judgment, the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: August 11, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge